UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JORGE L. QUINTANA; and
LIBERTAD QUINTANA,

                                        Plaintiffs,

        v.                                              3:12-cv-1334

NEW YORK STATE DIVISION OF STATE
POLICE; DOUGLAS MARSCHILOK; BRIAN
DENGLER,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiffs Jorge and Libertad Quintana commenced the instant action against

Defendants New York State Division of State Police, Douglas Marschilok, and Brian Dengler,

pursuant to 42 U.S.C. §§ 1983 and 1985 claiming violations of their rights as protected by the

Fourth and Fourteenth Amendment to the United States Constitution.  Plaintiffs also assert

various state law causes of action.  Presently before the Court is Defendants' motion for

summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Amended

Complaint in its entirety.  Plaintiffs oppose the motion.

## I.      FACTS

        On September 2, 2011, Defendant New York State Troopers Douglas Marschilok

and Brian Dengler responded to a radio call about a trespass in progress at 17 River Street

in Stamford, New York (the "property" or "real property").  The call had apparently been made

by Patricia Vanloo.  The officers arrived on the scene and spoke with Vanloo.  Vanloo advised that she lost her house located at 17 River Street to the bank.  Vanloo stated that Bank of America held the mortgage, but that her name was still on the paperwork.  Vanloo further advised that Plaintiffs Jorge and Libertad Quintana gave Delaware County Real Estate Broker George Bergleitner a $20,000 deposit for the purchase of the real property.  Bergleitner apparently was retained to sell the property on behalf of Bank of America.  Vanloo told the officers that she made a verbal agreement with Plaintiffs that they could move their property into the house, but they could not do anything else with the property until the closing.  Vanloo stated that she found Plaintiffs on the property, that they were operating a thrift store on the property, and that she wanted them to leave.

The officers interviewed Plaintiffs who stated that they bought the house from Bergleitner for $20,000 and that they, therefore, had a right to be on the property.  Plaintiffs claimed that they paid the purchase price in full and had an oral agreement to use and possess the property.  Plaintiffs stated that Bergleitner gave them the keys so they could store their belongings on the property.

The officers contacted Bergleitner who stated that Vanloo was the record owner, he had been unsuccessfully attempting to contact Bank of America concerning a sale of the property to Plaintiffs, and that he would be willing to return Plaintiffs' deposit until he heard from Bank of America.  Bergleitner advised the officers that he agreed with Vanloo that Plaintiffs should not be permitted to remain on the property until closing.

The officers advised Plaintiffs that Vanloo and Bergleitner wanted them off the property.  Plaintiffs indicated they needed two weeks to remove their property.  Vanloo stated she would give Plaintiffs one week.  Plaintiffs agreed to remove their belongings.

Thereafter, in November 2011, Vanloo reported ongoing issues concerning the property. Police reports indicate that Vanloo complained that Plaintiffs were given the keys to the property to put boxes therein, but were not permitted to reside there. Vanloo further complained that Plaintiffs had been coming and going in excess of their limited authority to store personal property. New York State Trooper Ralph Reed (not a Defendant herein) responded to this call and advised Plaintiffs that they must stay off the property.

On November 20, 2011, the New York State Police received a call from Plaintiffs requesting assistance in the removal of their personal property from the real property. New York State Trooper Matthew Strobeck (not a named Defendat) escorted Jorge Quintata to the real property to assist him in removing his personal property.

On February 24, 2012, Trooper Richard Cecce responded to Plaintiffs' request for assistance in the removal of their personal property from the real property. The police report indicates that Plaintiffs were permitted to enter the real property to remove their personal property, that the lock on the back door had been cut with bolt cutters, Plaintiffs claimed that numerous items of their personal property were missing, and the Vanloo and the Quintanas were accusing one another of wrongdoing. The police considered the matter closed.

Plaintiffs filed various other complaints with the New York State Police concerning the real property, all of which were determined not to have any basis and were not pursued.

Plaintiffs commenced the instant action claiming that Defendants violated their rights as protected by the Fourth and Fourteenth Amendments to the United States Constitution, and asserting various state law causes of action. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P 56 seeking dismissal of the Complaint in its entirety. Plaintiffs oppose the motion.

## II.    STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Rule 56.  It is well settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

# III.    DISCUSSION

## a.    Eleventh Amendment Immunity

To the extent Plaintiffs seek damages against the New York State Police or against Defendants Marschilock and Dengler in their official capacities, such claims are barred by the Eleventh Amendment.  <u>Cannistraci v. Kirsopp</u>, 2012 WL 1801733, at * (N.D.N.Y. 2012). Accordingly, the claims against the New York State Police are dismissed.

## b.    Due Process

To the extent Plaintiffs assert claims that they were deprived of property without due process of law (including compliance with various provisions of New York State law), those claims also must be dismissed.  This is because Plaintiffs did not have a protected property interest in remaining on the real property.  <u>Adams v. Suozzi</u>, 517 F.3d 124, 127 (2d Cir. 2008) (noting that a procedural due process claim requires analysis of: (1) whether the plaintiffs possess a protected liberty or property interest, and, if so, (2) what process the plaintiffs were due before they could be deprived of that interest.").  Although Plaintiffs may have placed a deposit with Bergleitner or paid the full purchase price for the real property,[1] and even though Plaintiffs may have signed a contract to purchase the property, there was no contract for the sale of the property that was signed by the property owner (either Vanloo or Bank of America).  Accordingly, there was no enforceable contract for the sale of the property. <u>See</u> N.Y. Gen. Obl. Law § 5-703.[2]  Moreover, a contract for the sale of property

---

[1] Plaintiffs claim that they gave Berleitner $20,000 as the full purchase price for the property.  For the reasons to be stated, whether Plaintiffs paid a deposit or the full purchase price is irrelevant to the outcome of Defendants' motion.

[2] Section 2 of § 5-703 provides, in relevant part, that " [a] contract for the . . . sale . . . of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof,

(continued...)

does not give the prospective purchaser the immediate right to use and possess the property.  Rather, such rights typically are given when the deed is transferred.  In fact, the contract that Plaintiffs supply in opposition to Defendants' motion expressly provides that "[p]ossession shall be granted upon transfer of title."  There is no evidence that title was ever transferred.

Plaintiffs claim that there was an oral agreement that they could use the property.  There is a factual dispute over the extent of any such agreement; that is, whether Plaintiffs were permitted to only store their personal property or could remain on the property.[3] Assuming that there was an oral agreement permitting Plaintiffs to remain on the property, thereby giving them a protected property interest in remaining on the property, the Court finds that there was no constitutional violation.  The evidence does not demonstrate that Defendants did anything to deprive Plaintiffs of any right to use the property.  Defendants did not arrest Plaintiffs, did not remove them from the property, did not remove any of Plaintiffs' property, and did not participate in the changing of any locks.  Rather, Defendants advised Plaintiffs that Vanloo and Bergleitner wanted them off the property.  Plaintiffs then asked for time to remove their property, which was negotiated among the parties.  The undisputed facts demonstrate that Plaintiffs kept their personal property on the real property for months

---

[2](...continued)
expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing."

[3] The Court notes that Plaintiff's original Complaint states that they were given the keys "for the property and the rights to use the real property to . . . clean the property and the rights to use the property as storage in preparation of the property for the Plaintiffs' business and . . . for storage." Compl. at ¶ 14 (emphasis added).  In any event, for the reasons stated herein, whether Plaintiffs were permitted to use the real property for storage or had greater use of the property is irrelevant to the disposition of Defendants' motion.

after the September 2 incident without any consequences by Defendants,[4] thereby negating any inference that Defendants interfered with any rights to use the real property that Plaintiffs may have had.  To the extent Plaintiffs allege that Defendants were somehow involved in the disposition of their personal property, there are insufficient facts to substantiate that Defendants were personally involved in the disposition of their personal property.

Assuming *arguendo* that there was a constitutional violation, the Court finds that, considering the facts and circumstances presented to the officers, officers of reasonable competence could disagree on the legality of Defendants' actions.  Accordingly, Defendants are entitled to qualified immunity on the due process claim.

### c.   Fourth Amendment

Plaintiffs also allege that they were subjected to an unlawful search and seizure in violation of their rights as protected by the Fourth Amendment.  Plaintiffs were never seized and, therefore, cannot claim a Fourth Amendment violation on that ground.  Plaintiffs further argue that Defendants entered their real property without their consent and looked around in each of the rooms.  For the reasons previously discussed, it is doubtful whether Plaintiffs had a legitimate expectation of privacy in the real property.  Even if they had the right to use the premises, there is no indication that any such right was exclusive of the actual property owner.  On the date in issue, Defendants responded to a call by Vanloo and investigated.  The officers entered the premises with the implicit (if not explicit) consent of Vanloo and Bergleitner.  Accordingly, there was no constitutional violation.

---

[4] Vanloo did file a criminal complaint against Plaintiffs.  The individual Defendant officers were not involved with the criminal complaint.

Even assuming there was a constitutional violation, the Court finds that reasonable officers could disagree whether Defendants had the authority to enter the real property, thereby entitling them to qualified immunity on the Fourth Amendment claim. See Moore v. Andreno, 505 F.3d 203 (2d Cir. 2007).

### d. Equal Protection

Plaintiffs also assert that Defendants violated their rights as protected by the Equal Protection Clause. This claim must be dismissed as there is insufficient evidence upon which a fair minded trier of fact could reasonably conclude that Defendants acted on account of Plaintiffs' race or national origin. For similar reasons, and because there is insufficient evidence of a conspiracy, Plaintiffs' claim under 42 U.S.C. § 1985 also must be dismissed.

### e. State Law Claims

Having dismissed the federal claims at this early juncture of the case, the Court declines to exercise supplemental jurisdiction over any remaining state law claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Amended Complaint is DISMISSED in its entirety. All other pending motions (see e.g. Dkt. Nos. 33, 34, 35, and 40) are DENIED AS MOOT. The Clerk of the Court is directed to close the file in this matter.

IT IS SO ORDERED.

Dated: May 17, 2013

Thomas J. McAvoy
Senior, U.S. District Judge